United States District Court
Southern District of Texas

**ENTERED**

July 24, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VICTOR HUGO CANALES; aka RIVERA-SALAZAR, | § § § | |
| Petitioners, | § § | |
| VS. | § § | CIVIL ACTION NO. 2:19-CV-00330 |
| LORIE DAVIS, | § § | |
| Respondent. | § § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Victor Hugo Canales[1] is an inmate in the Texas Department of Criminal Justice ("TDCJ") and is currently incarcerated at the Wallace Unit in Colorado City, Texas. Proceeding *pro se*, Canales filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on December 10, 2019.[2] (D.E. 1 in Case No. 2:19-cv-00380).[3] Canales raises multiple claims of ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and trial court error. Respondent filed a motion for summary judgment, to which Canales has responded. (D.E. 15, 25). As discussed more fully

---

[1] Canales indicated at trial that his actual name is Herberto Rivera, but that he used his brother-in-law's name Victor Canales in order to work in the United States. (D.E. 16-11 at 45, 58). This memorandum refers to him as Canales.

[2] Canales stated under penalty of perjury that he placed his petition in the prison mail system on December 10, 2019, and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998), and Rule 3, Rules Governing Section 2254 Cases.

[3] Canales's two cases, 2:19-cv-00330 and 2:19-cv-00380, were consolidated. His petition was filed in case number 2:19-cv-00380 and is cited in this memorandum as D.E. 1. However, all other docket cites are to documents in case number 2:19-cv-00330.

below, it is recommended that Respondent's motion for summary judgment be granted and Canales's habeas corpus petition be denied.  It is further recommended that a Certificate of Appealability ("COA") be granted on Canales's claim that trial counsel was ineffective for failing to object to the state's questioning about his prior drug conviction.

## I.    JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate because Canales was convicted in Nueces County, Texas.  28 U.S.C. § 2254(a); 28 U.S.C. § 124(b)(6); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.   BACKGROUND

### a.    State Court Records

In January 2016, Canales was charged in an indictment with one count of continuous sexual abuse of a child, in violation of Tex. Penal Code § 21.02.  (D.E. 16-5 at 7).  This charge was based on two separate incidents of aggravated sexual assault of a child, in violation of Tex. Penal Code § 22.021, premised on Canales allegedly penetrating a child's sexual organ with his finger and mouth.  (*Id.* at 7-8).  Alternatively, the indictment charged indecency with a child, in violation of Tex. Penal Code § 21.11(a)(1), based on Canales touching the victim's genitals.  (*Id.* at 8).

At trial, Canales's counsel stated during opening arguments that he expected the jury would "hear evidence that possibly the child wanted my client deported and that was the basis for all of these allegations."  (D.E. 16-10 at 12).

2

The victim S.L.[4] testified that she used to live with her mom, her three brothers, and Canales, who she referred to as her step dad.  (*Id.* at 15-17).  Early in her testimony, the prosecutor asked her about the "rules" they had previously discussed for testifying, which included telling the truth, giving spoken answers, and not spinning in the chair.  (*Id.* at 21-23).  During this discussion, the prosecutor asked if she had told S.L. anything other than to tell the truth, and S.L. responded "I don't remember."  (*Id.* at 22-23).

S.L. testified that, when she was around 11, she was wrestling with Canales when he "put his head towards my middle area" and "pulled down my pants and underwear[]."  (*Id.* at 27).  Canales then "put his tongue in my middle."  (*Id.*).  Canales told her not to tell her mom because she would kick him out and he would have nowhere to go.  (*Id.* at 28).  On another occasion when S.L. was in bed with Canales and her mom, she woke up and his hands were in her pants, where he was rubbing her genitals with a finger.  (*Id.* at 29).  Her mom was asleep.  (*Id.* at 30).  When they would play wrestle, Canales would get on top of her and hump her over her clothes.  (*Id.* at 32). This happened more than once.  (*Id.* at 33-34).  The incidents happened before her mother got home from work, and her brothers were in other parts of the house or outside.  (*Id.* at 34).  Other times, Canales would "grab [her] head and . . . put it against his middle."  (*Id.* at 35).  Another time, he "took it out of his pants one day and showed it to me."  (*Id.*).  The last time something happened was when S.L. was around 12.  (*Id.* at 36).  Canales woke her up and kept telling her to make love to him, and when she said no, he grabbed her and put her on

---

[4] Because the victim was a 12-year-old minor, this memorandum refers to her as S.L. rather than by her full name.

top of him.  (*Id.* at 37).  Both were clothed.  (*Id.*).  Her grandmother was sleeping at the time, and her little brother was in the room but playing a video game.  (*Id.* at 37-38).  When Canales put S.L. on top of him, she felt that his "middle" was hard.  (*Id.* at 39).  Canales also tried to kiss her and stick his tongue in her mouth.  (*Id.* at 40).  These incidents happened over the course of a year.  (*Id.* at 43).  S.L. identified the "middle" as the genital area on a diagram.  (*Id.* at 57-59; D.E. 16-14 at 5-6).

Elana Ermenc Estrada, a forensic child abuse nurse examiner, testified that she examined S.L. after she reported the abuse.  (D.E. 16-10 at 121, 125).  During the examination, S.L. recounted a series of incidents consistent with her testimony.  (*Id.* at 126).  After taking S.L.'s history, Estrada conducted a physical examination, including an examination of S.L.'s genitals.  (*Id.* at 127).  She found no trauma or anything else abnormal.  (*Id.* at 127-28).  This was not uncommon, as 85 to 95 percent of patients have no physical injuries.  (*Id.* at 130).  Estrada did not collect any physical evidence because S.L. reported that the last incident was over a month prior to the examination.  (*Id.* at 131-32).  Moreover, genital penetration with a finger was unlikely to cause any trauma.  (*Id.* at 132).

Cindy Croston, the Custodian of Records for Corpus Christi Medical Center, identified a copy of S.L.'s medical record from Bayview Behavioral Hospital.  (*Id.* at 148-50).  The state introduced the records into evidence with no objection.  (*Id.* at 150-51).  The exhibit consisted of over 800 pages of medical records.  (D.E. 16-14 at 17-373; D.E. 16-15 at 5-462).

Canales testified that he had gone to jail several times for immigration purposes and was sent back to Mexico, but he always returned to the United States. (D.E. 16-11 at 49-50). He began to have issues with S.L. after he discovered she was receiving photos of older men on her phone and told her that was inappropriate. (*Id.* at 52-54). He had never sexually abused her and did not understand why she was making the accusations against him. (*Id.* at 55).

On cross-examination, the prosecutor asked Canales several questions about the timeline of his arrivals in and removals from the United States, including his prior convictions for illegal re-entry. (*Id.* at 56-61). During this series of questions, the prosecutor also asked about Canales's prior drug conviction:

> Q: Okay. So that would be after your felony drug case?
> A: Yes, afterwards.
> Q: And that was – the possession of marijuana was a third degree felony, correct?
> A: Yes.
> Q: Isn't that between 5 and 50 pounds of marijuana?
> A: Yes.
> Q: How much marijuana did you have?
> A: Like, I think it was 20 pounds.
> Q: Were you selling it?
> A: No, I was not selling it.
> Q: Were you transporting it for somebody?
> A: Yes.
> Q: Did those drugs come from Mexico?
> A: No.

(*Id.* at 60). Canales reiterated that he never did what S.L. accused him of. (*Id.* at 66-67, 83-86).

During cross-examination, the court excused the jury and asked counsel to approach. (*Id.* at 79-80). The court asked whether the law had changed regarding

5

questions eliciting the details of a prior conviction. (*Id.* at 80). Canales's counsel responded that it had not, but that he did not object because Canales wanted to tell the truth. The court responded that the state was not supposed to go into the details and that the questions could have caused unfair prejudice with the jury because they implied that Canales was a drug dealer. (*Id.*). The prosecutor apologized and stated that she was not familiar with that area of the law. (*Id.* at 81). The court stated that counsel's failure to object may have been ineffective because there was no reason for those details to be in front of the jury. (*Id.*). The prosecutor stated that she would not talk about it anymore and agreed to strike the questions from the testimony and have a curative instruction, but Canales's counsel opted not to do this as it would call greater attention to the testimony. (*Id.* at 81-82).

The jury found Canales guilty only on the lesser-included charge of indecency with a child by contact. (D.E. 16-12 at 5). The court sentenced Canales to 20 years' imprisonment. (D.E. 16-13 at 21). Following sentencing, counsel moved to withdraw from any appeal. (D.E. 16-6 at 26-27).

On direct appeal and with a new attorney, Canales argued that trial counsel was ineffective for failing to object to the state's questioning about the details of Canales's prior convictions and failing to object to hearsay throughout the hundreds of pages of medical records the state introduced as evidence. (D.E. 16-16 at 12-25).

The Thirteenth District Court of Appeals affirmed the conviction. (D.E. 16-4). First, as to the medical records, the court noted that the briefing identified no specific statements in the exhibit that should have been objected to. (*Id.* at 10). Interpreted as a

6

global objection, the court concluded that the medical records fell within the hearsay exception in Tex. Rule of Evid. 803(6) for business records. (*Id.* at 11). Moreover, specifically as to statements by the victim in the records, the court stated that her statements were generally about her mental health treatment and would fall within the hearsay exception in Tex. Rule of Evid. 803(4) for statements made for the purposes of mental health diagnosis or treatment. (*Id.* at 12). The court again noted that the briefing had not identified any specific statement that would be inadmissible. Thus, the court concluded that trial counsel was not ineffective for failing to object to the medical records based on hearsay. (*Id.*). Further, to the extent that Canales raised a Confrontation Clause argument regarding the statements in the medical records by medical professionals, the court noted that the Confrontation Clause applies only to statements that are testimonial in nature, and medical records created for treatment purposes are not testimonial. (*Id.* at 12-14).

Second, as to the state's questioning about Canales's prior offenses, the court stated that Canales's immigration status was necessary to the defensive theory that the victim fabricated the allegations in order to have Canales deported. (*Id.* at 14). Thus, noting that Canales's briefing challenged only counsel's failure to object, the court concluded that the questioning about Canales's prior convictions for illegal re-entry were proper because Canales's trial strategy opened the door. (*Id.* at 14-15). As to the drug conviction, the court concluded that the additional details about the conviction were clearly inadmissible and that, based on the trial judge's statements, it was clear that he would have sustained an objection. (*Id.* at 15-16). However, the court concluded that

Canales had not rebutted the presumption that trial counsel's failure to object was part of a sound trial strategy to avoid drawing attention to the evidence. (*Id.* at 16-17). Finally, the court concluded that, even if counsel was deficient, Canales had not shown that he was prejudiced where the state placed no further emphasis on the drug conviction and his history of deportation and re-entry were already before the jury. (*Id.* at 17-18).

In May 2019, Canales filed an application for a writ of habeas corpus under Tex. Code of Crim. P. art. 11.07. (D.E. 16-25 at 13-61). In the Article 11.07 application, Canales raised the same claims as in his present § 2254 petition, along with additional claims. (*See id.*).

The state trial court recommended that the Article 11.07 application be denied because Canales had failed to show that either trial or appellate counsel performed deficiently or that he suffered any prejudice from their performance. (*Id.* at 105). Further the trial court found that Canales had failed to prove the remaining allegations in his application. (*Id.*). A judge of the TCCA denied the application without a written order based on the trial court's findings. (D.E. 16-24 at 1).

**b.    Petition and Claims**

Liberally construed, Canales raises five claims in his § 2254 petition and attached memorandum. First, he argues that his trial counsel was ineffective in several ways, including: (1) failing to investigate and object to the victim's medical records, which showed no evidence of sexual abuse and contained hearsay statements from dozens of medical professionals; (2) failing to call witnesses, including other family members; and (3) failing to object to the state's questions about the details of his prior convictions.

8

(D.E. 1 at 6-7; D.E. 1-9 at 28-35, 41-43, 45-54).   Second, Canales contends that the prosecutor improperly elicited details about his prior convictions during his testimony. (D.E. 1 at 7; D.E. 1-9 at 36-44).   Third, he asserts that the trial court, in order to get the proceedings over with, denied him a fair trial by failing to declare a mistrial.  (D.E. 1 at 7; D.E. 1-9 at 52).   Fourth, Canales argues that appellate counsel was ineffective because she failed to fully brief the arguments on appeal.   (D.E. 1 at 6; D.E. 1-9 at 25-27). Finally, he contends that the cumulative effect of these errors warrants reversal of his conviction.  (D.E. 1-9 at 44, 55-58).

## III.   DISCUSSION

### a.   Standard of Review

A § 2254 petition raising claims that were adjudicated on the merits in state court may not be granted unless the adjudication of the claim: (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of

9

the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). Notably, when considering the facts of a habeas case, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). This is a difficult standard to meet. *Id.* at 102-03.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Where a state court decides a prisoner's federal claim on the merits in a reasoned opinion, the federal court merely "reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Even summary rulings by state courts are afforded deference under

§ 2254(d), and in such cases, the relevant question is what arguments or theories could have supported the state court's decision. *Harrington*, 562 U.S. at 99, 102.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.* at 687-88.

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed

11

as of the time of counsel's conduct.  A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id.* at 690.

To show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 695.

Federal court review of a state court's denial of an ineffective-assistance claim is "doubly deferential" because the court must give deference both to counsel's performance and to the state court's conclusion.  *Cullen*, 563 U.S. at 190.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Harrington*, 562 U.S. at 105.

### b.   Ineffective Assistance of Trial Counsel

In the motion for summary judgment, Respondent argues that Canales has not demonstrated that trial counsel was ineffective.  (D.E. 15 at 11).  First, as to counsel's failure to investigate the medical records, Respondent contends that Canales has not identified any other medical records that could have aided his defense or shown that a

12

reasonable attorney would have investigated further.  (*Id.* at 14).  Second, as to the failure to object to the medical records, the Respondent argues that no objection was warranted because, as the court of appeals determined on direct appeal, the records were admissible as business records and there was no Confrontation Clause issue.  (*Id.* at 14-19).  Third, as to the failure to call witnesses, Respondent argues that Canales has not indicated who these witnesses are, established that they were available to testify, or indicated what they would have testified to.  (*Id.* at 20).

Canales responds that trial counsel was shown reports before trial that stated that S.L. had not been sexually abused by him.  (D.E. 25 at 4).  He argues that the evidence showed that S.L. was not admitted to the hospital in relation to sexual abuse, but rather due to issues of bullying at school.  (*Id.* at 4-5).  Canales argues that that no family members ever saw him do anything to the victim and that Estrada testified that there was no evidence of physical trauma, which showed that he was innocent.  (*Id.* at 5).  Further, he argues that no sound strategy could explain counsel's decisions not to object to or further investigate the medical records, call family members as witnesses, or object to the questions about his criminal history.  (*Id.* at 8-10).  Canales otherwise reiterates the arguments made in his petition.  (*Id.* at 12-15).

Counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that an investigation is unnecessary.  *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997).  In raising a failure-to-investigate claim, a defendant must specifically allege what the investigation would have found and how it would have altered the outcome.  *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).  The fact that

an investigation would have uncovered admissible evidence is insufficient to show prejudice. *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982). Evidence that could have been uncovered must be sufficient to undermine confidence in the outcome of the trial. *United States v. Lewis*, 786 F.2d 1278, 1283 (5th Cir. 1986).

Allowing the defendant to testify regarding damaging information can be part of a viable trial strategy of maintaining credibility by not appearing to have anything to hide. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Where the only source of the missing witnesses' testimony is the defendant, courts view such testimony with caution. *Id.*

Here, Canales has not established that the state court's conclusion that counsel's performance was not deficient, and that he was not prejudiced by an deficiency, was contrary to, or an unreasonable application of, clearly established federal law because he has not shown that counsel's actions were unreasonable or that there was a reasonable possibility that the result of the trial would have been different.

First, as to counsel's failure to investigate, even if Canales could establish that counsel performed deficiently by failing to further investigate the victim's medical records, he has not shown that he was prejudiced. Canales alleges that if counsel had investigated the medical records more completely, he would have uncovered that the victim never went to the hospital or attempted to harm herself because of sexual abuse,

14

but rather as a result of bullying by other children.  (D.E. 25 at 4-5).  However, Canales does not expand on how this would have altered the outcome.  *See Miller*, 420 F.3d at 361 (stating that defendant must specifically allege how investigation would have changed the outcome).  As to physical evidence, it was undisputed at trial that a physical examination showed no evidence of sexual abuse.  (D.E. 16-10 at 127-28).  As to mental health evidence, there was already evidence in the record that the victim's suicidal and depressed feelings were caused by issues other than the sexual abuse, including sadness caused by deaths in the family.  (*See* D.E. 16-15 at 302, 328).  Canales does not allege how additional medical records to this effect would have changed the outcome, particularly where there were also medical records in which the victim reported sexual abuse and anxiety when she was around him.  (*See, e.g., id.* at 47, 213, 225, 309, 328).

Second, as to counsel's failure to object to the state's questioning regarding Canales's prior convictions, Canales has failed to establish that counsel performed deficiently.  Part of counsel's trial strategy was the contention that the victim was lying because she wanted Canales to be deported.  (D.E. 16-10 at 12).  Under Texas law, otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door" to the evidence.  *Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997).  By following this defense strategy, counsel opened the door to further questioning about the illegal re-entry offenses and, thus, had no valid objection to the questions.  As to the questions about Canales's prior drug conviction, it is clear from the record that the trial court would have sustained any objection to these questions.  (D.E. 16-11 at 80-81).  However, counsel indicated that he opted not to object in order to

15

highlight Canales's honesty.  (*Id.* at 80).   Allowing the defendant to testify regarding damaging information can be part of a viable trial strategy of maintaining credibility by not appearing to have anything to hide.  *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).   Further, even if counsel did perform deficiently in failing to object to the details of the drug conviction, Canales has not established that the state court unreasonably concluded that no prejudice occurred where the prosecution did not rely on, or even mention, the details of the drug conviction again.

Third, as to counsel's failure to object to the introduction of the medical records on hearsay and Confrontation Clause grounds, Canales has failed to establish that counsel was deficient.   Under Texas law, a sexual assault victim's medical records are admissible under Texas Rule of Evidence 803(6) as an exception to the hearsay rule.  *Castaneda v. State*, 28 S.W.3d 685, 693 (Tex. App.—Corpus Christi 2000, pet. Ref'd).   Further, statements made for the purposes of mental health diagnosis and treatment are admissible under Texas Rule of Evidence 803(4) as an exception to the hearsay rule.   Tex. Rule of Evid. 803(4).   Canales argues that Rule 803(4) would not apply here because S.L. was not admitted to the hospital as a result of the sexual abuse, but the medical records do discuss the effect the sexual abuse had on S.L.  (*See, e.g.,* D.E. 16-15 at 47, 213, 225, 309, 328).   As to Canales's Confrontation Clause challenge to statements made by medical professionals in the records, medical records made for the purpose of treatment are not testimonial in nature and thus do not implicate the Confrontation Clause.  *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2, 324 (2009) (concluding that business records and medical records made for treatment purposes are not testimonial).

16

Finally, as to counsel's failure to call other family members as witnesses, Canales has not established that counsel was deficient or that he was prejudiced.  As an initial matter, Canales is the only source regarding what these witnesses would have testified, and the contents of what they would have testified to must be viewed with caution.  *See Lockhart*, 782 F.2d at 1282.  Liberally construed, Canales contends that the family members would have testified that they never saw him do anything to the victim.  (*See, e.g.,* D.E. 25 at 5).  However, this fact was not in dispute.  The victim testified that no one else in the family ever saw Canales do anything to her.  (D.E. 16-10 at 30, 34, 37-38).  Canales has not established that counsel performed deficiently where the only testimony he contends the additional witnesses would have given was consistent with the other testimony at trial.  For the same reason, he has not established that he was prejudiced by the failure to call these witnesses.

Accordingly, because Canales has failed to establish that counsel performed deficiently or that he was prejudiced by any deficiency, he has not met his burden to show that the state court's rejection of his ineffective-assistance claims was contrary to, or an unreasonable application of, clearly established federal law.

    c.    *Prosecutorial Misconduct*

Respondent argues that the decision of the state court of appeals is entitled to deference regarding its conclusions that the details of Canales's immigration offenses were admissible due to his trial strategy and that the details of his drug offense did not prejudice the jury.  (D.E. 15 at 21-25).  Respondent contends that Canales has not established that these conclusions were unreasonable.  (*Id.* at 25).

17

Canales responds that the prosecutor threatened the victim to testify against him by asking several questions multiple times, even though S.L. did not remember the answers. (D.E. 25 at 7). He argues that the trial court's statements following the state's questioning on his prior convictions established that the prosecutor behaved inappropriately. (*Id.* at 11).

In habeas corpus proceedings, allegedly improper prosecutorial statements are reviewed to determine if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Ables v. Scott*, 73 F.3d 591, 592 n.2 (5th Cir. 1996) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "The statements must render the trial fundamentally unfair," which is true when there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). The statement must be considered in context in order to determine whether it rendered the trial fundamentally unfair. *Greer v. Miller*, 483 U.S. 756, 765-66 (1987).

Liberally construed, Canales challenges two actions by the prosecutor. First, he claims that the prosecutor threatened S.L. to testify. This claim appears to be based on the moment early in S.L.'s testimony where the prosecutor asked her questions about how they prepared for her testimony. (*See* D.E. 16-10 at 21-23). In short, there is no evidence of a threat during this series of question, nor during any other part of the prosecutor's questioning. S.L. testified merely that she was told to tell the truth and did not remember if she was told anything else. (*Id.*). Second, Canales challenges the prosecutor's questions about the details of his prior convictions. As discussed above,

18

Canales's prior convictions for illegal re-entry were relevant to his defense theory that S.L. lied in order to have him deported. (*Id.* at 12). Thus, the prosecutor's questions on those convictions were not improper. The question about the details of his prior drug conviction was improper, but the prosecutor did not dwell on the issue and never raised the drug conviction again. (*See* D.E. 16-11 at 60). In this context, Canales has not established that the state court unreasonably concluded that the prosecutor's questioning did not render the trial fundamentally unfair, particularly where the details of his prior immigration offenses were properly in the record. *Greer*, 483 U.S. at 765-66.

   d.   *Trial Court Error*

Respondent argues that Canales's claim that he was denied a fair trial must be dismissed because Canales has failed to support it. (D.E. 15 at 25).

Canales did not specifically respond regarding this claim.

Here, Canales has provided no support for his claim that the trial court failed to declare a mistrial because it wanted to get the trial over with. *See Ross*, 694 F.2d at 1011 (stating that a habeas petitioner's bald assertions, unsupported by anything in the record, are not of probative evidentiary value). The record shows that the trial court *sua sponte* raised issue with the prosecutor's questions about the details of Canales's prior drug conviction. (D.E. 16-11 at 79-81). However, no party moved for a mistrial, and Canales's counsel opted not to object or seek a limiting instruction on strategy grounds. (*Id.* at 81-82). There is no evidence on the face of the record that the trial court approached this situation unfairly or with the goal of getting the trial over with, nor has Canales alleged any other facts that would support that conclusion.

19

  *e.* *Ineffective Assistance of Appellate Counsel*

   Respondent contends that Canales has failed to establish any trial errors with arguable merit, and thus has failed to establish that the state court's conclusion that counsel's performance was not deficient was contrary to, or an unreasonable application of, clearly established federal law.  (D.E. 15 at 26-27).

   Canales responds that the arguments in the state's brief on direct appeal establish that his appellate counsel was ineffective.  (D.E. 25 at 6).

   Claims that appellate counsel rendered ineffective assistance are evaluated under the *Strickland* standard.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  In the context of an appeal, this means that the defendant must show that, but for counsel's errors, he would have prevailed on appeal.  *Id.* at 286.  It is "virtually impossible" to raise an ineffective-assistance claim on direct appeal because the trial record often fails to contain the information necessary to substantiate the claim.  *Trevino v. Thaler*, 569 U.S. 413, 423 (2013).

   Here, Canales has not established that the state court's conclusion that appellate counsel's performance was not deficient was contrary to, or an unreasonable application of, clearly established federal law.  Canales's claim is founded on the argument that appellate counsel failed to specifically identify any statements in the medical records that trial counsel should have objected to.  (*See* D.E. 25 at 6-7).  However, Canales has also not identified any statements in the medical records that trial counsel should have objected to, and as discussed above, the medical records were generally admissible under the Texas Rules of Evidence and caselaw.  Moreover, at the direct appeal stage, there was

no evidence in the record regarding why counsel opted not to object to the introduction of the medical records. Thus, the court of appeals would not have been able to determine whether it was a reasonable strategic decision.[5] *See Trevino*, 569 U.S. at 423 (noting that the trial records often does not contain the information necessary to substantiate an ineffective-assistance claim). Under these circumstances, Canales has not established that, but for counsel's failure to more fully brief the issues, he would have prevailed on appeal. *Smith*, 528 U.S. at 286.

    *f.    Cumulative Error*

Respondent contends that, because the rest of Canales's claims are without merit, he cannot establish that any combination of errors warrant reversal. (D.E. 15 at 27-28).

Federal habeas relief is available for cumulative errors of a constitutional dimension. *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007). The cumulative-error doctrine requires an aggregation of non-reversible errors that, when considered together, represent a denial of the constitutional right to a fair trial. *United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001). These errors must "so infect[] the entire trial that the resulting conviction violates due process." *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993).

Here, as discussed in each individual issue above, Canales has established only that the prosecutor improperly questioned him regarding the details of his prior drug

---

[5] Notably, during closing arguments, counsel did reference the quantity of medical records in support of his argument that the state was attempting to make the quantity of allegations and charges obscure the fact that the allegations were vague and unsubstantiated. (D.E. 16-11 at 120).

conviction. He has established no other errors, and thus has not established that he suffered cumulative errors that infected the entire trial. *Williams*, 264 F.3d at 572 (noting that the cumulative-error doctrine is based on an aggregation of non-reversible errors).

Finally, to the extent that Canales argues that he is innocent and provides his own affidavit to that effect, it is not the role of a federal court to relitigate a state trial. (*See* D.E. 25-1); *Herrera v. Collins*, 506 U.S. 390, 401 (1993). There is no federal habeas review of freestanding claims of actual innocence, as the purpose of federal habeas review is to ensure that an individual is not imprisoned in violation of the Constitution, not to correct factual errors. *Id.* at 400-01.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Canales has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Here, reasonable jurists could debate whether trial counsel rendered ineffective assistance when he failed to object to the prosecutor's questioning about Canales's prior drug conviction. Thus, it is recommended that a COA be granted on the following issue:

> Whether the state court's denial of Canales's ineffective-assistance claim was contrary to, or an unreasonable application of, clearly established federal law where counsel failed to object or seek a curative instruction to the state's questioning about the details of Canales's prior drug conviction.

## V.   RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 15) be GRANTED. Canales's § 2254 petition should be DENIED. It is further recommended that a Certificate of Appealability be GRANTED on the issue defined above.

Respectfully submitted this 24th day of July, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).